**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

ILKIN SRADZHLY,
Identifying Alien Number: A 220-835-691

Petitioner,

v.

Raul Maldonado Jr., Warden, Metropolitan Detention Center, Brooklyn;
KENNETH GENALO, Field Office Director, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations, New York City Field Office;
DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement;
MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; and
TODD BLANCHE, Attorney General of the United States,

Respondents, in their official capacities.

Case No. 26-cv-5129

**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

---

## INTRODUCTION

1. Petitioner Ilkin Sradzhly, by and through undersigned counsel Igor Litvak, Esq., respectfully petitions this Court for a Writ of Habeas Corpus under 28 U.S.C. § 2241. Petitioner is presently confined at the Metropolitan Detention Center in Brooklyn ("MDC Brooklyn") in civil immigration custody. He has never received an individualized custody determination from any neutral decisionmaker.

2. Petitioner was paroled into the United States in December 2021 and lived here for approximately four and one-half years before his June 2026 immigration detention. On July 28, 2026, the New York–Varick Immigration Court denied his request for custody redetermination for one reason only: "No jurisdiction." See Ex. A.

3. That categorical denial cannot be squared with controlling Second Circuit

law. In *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), the Court of Appeals held that 8 U.S.C. § 1225(b)(2)(A) reaches only a noncitizen who is both an "applicant for admission" ("any noncitizen who is present in the United States and has not been admitted, or is arriving in the United States") and presently "seeking admission"—that is, presently requesting lawful entry after inspection and authorization. *Id.* at 74. A person who was paroled into the interior years ago and now seeks only relief from removal is not presently seeking admission.

4. The governing detention framework is therefore 8 U.S.C. § 1226, which states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) (Detention of criminal aliens), the Attorney General—(1) may continue to detain the arrested alien; and (2) may release the alien on— (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole. 8 U.S.C. § 1226(a).

5. Under 8 U.S.C. § 1226(c) Detention of criminal aliens:

> (1) Custody. The Attorney General shall take into custody any alien who—
>
> (A) is inadmissible by reason of having committed any offense covered in section 212(a)(2) [8 USCS § 1182(a)(2)],
>
> (B) is deportable by reason of having committed any offense covered in section 237(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) [8 USCS § 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D)],
>
> (C) is deportable under section 237(a)(2)(A)(i) [8 USCS § 1227(a)(2)(A)(i)] on the basis of an offense for which the alien has been sentence [sentenced] to a term of imprisonment of at least 1 year,
>
> (D) is inadmissible under section 212(a)(3)(B) [8 USCS § 1182(a)(3)(B)] or deportable under section 237(a)(4)(B) [8 USCS § 1227(a)(4)(B)], or

> (E) (i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title [8 USCS § 1182(a)]; and (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person, when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
> (2) Definition. For purposes of paragraph (1)(E), the terms "burglary", "theft", "larceny", "shoplifting", "assault of a law enforcement officer", and "serious bodily injury" have the meanings given such terms in the jurisdiction in which the acts occurred.
>
> (3) Detainer. The Secretary of Homeland Security shall issue a detainer for an alien described in paragraph (1)(E) and, if the alien is not otherwise detained by Federal, State, or local officials, shall effectively and expeditiously take custody of the alien.
>
> (4) Release. The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of title 18, United States Code, that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

6. Petitioner seeks immediate release from unlawful detention or, at minimum, a prompt individualized custody hearing before a neutral decisionmaker. No Immigration Judge has adjudicated whether Petitioner presents a danger to the community or a risk of flight.

7. Here, the circumstances requiring individualized review are concrete. One New York criminal case against Petitioner was dismissed in its entirety on July 21, 2026. See Ex. B. A separate Richmond County case remains pending; Petitioner has pleaded not guilty,

maintains that he lacked the knowledge and intent alleged by the prosecution, and has retained undersigned counsel to represent him in the matter. The undersigned counsel spoke to the assigned Assistant District Attorney Anthony Accardo on August 14th, 2026, and was advised that the District Attorney's offer to resolve the criminal case was a payment of restitution of approximately $3,800 and a plea to a non-criminal violation, which would result in no criminal conviction or a criminal record. The Richmond County matter was adjourned to September 17th, 2026 for a disposition.

8. Petitioner is married to a United States citizen who has filed a Form I-130 petition on his behalf, which remains pending. <u>See</u> Exs. C, D, E. He has pursued asylum relief and holds a USCIS-issued Employment Authorization Document in category C08. <u>See</u> Exs. F, G. These circumstances materially strengthen his ties to the community and his incentive to appear in both criminal and immigration proceedings.

## JURISDICTION AND VENUE

9. This Court has habeas jurisdiction under 28 U.S.C. § 2241(c)(3) because Petitioner is "in custody" and challenges that custody as contrary to federal law and the Fifth Amendment. See *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003).

10. This action also arises under the Constitution and laws of the United States, 28 U.S.C. § 1331. Petitioner challenges only the legality of and the procedures governing his present detention. He does not ask this Court to review or vacate any removal order or to decide the merits of his underlying removal proceedings.

11. Neither 8 U.S.C. § 1226(e) nor 8 U.S.C. § 1252(b)(9) bars this action. Section 1226(e) withdraws review of the Attorney General's discretionary judgment in a particular case; it does not foreclose a challenge to "the statutory framework that permits [a

noncitizen's] detention without bail." *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (citation omitted). Petitioner does not ask this Court to review a discretionary bond decision; he asks it to determine which statute governs and what process the Constitution requires. Section 1252(b)(9), in turn, channels review only with respect to a final order of removal, and does not displace habeas jurisdiction over a challenge to detention itself. *See Ozturk v. Hyde*, 136 F.4th 382, 399 (2d Cir. 2025)(as a threshold matter, the very text of § 1252(b) sets out requirements only "[w]ith respect to review of an order of removal under subsection (a)(1)." 8 U.S.C. § 1252(b). No such order of removal is at issue here. In any event, the Supreme Court held that "§ 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined.")

12. Venue is proper in the Eastern District of New York because Petitioner is physically confined at MDC Brooklyn within this District, and his immediate physical custodian is named as a Respondent. See *Ozturk*, 136 F.4th at 390; *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

13. Petitioner has filed no prior petition for a writ of habeas corpus challenging this or any other detention.

## **PARTIES**

14. Petitioner Ilkin Sradzhly, A No. 220-835-691, is a 31-year-old native of Azerbaijan and citizen of the Russian Federation who is presently detained at MDC Brooklyn in Brooklyn, New York.

15. Respondent Raul Maldonado Jr**.,** is the Warden of MDC Brooklyn and is Petitioner's immediate physical custodian. Warden is sued in an official capacity.

16. Respondent Kenneth Genalo is the Field Office Director of U.S.

Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations, New York City Field Office, which exercises operational authority over Petitioner's immigration detention within this District. He is sued in his official capacity.

17. Respondent David Venturella is the Acting Director of ICE and is responsible for the agency's detention and removal operations. He is sued in his official capacity.

18. Respondent Markwayne Mullin is the Secretary of the U.S. Department of Homeland Security ("DHS"), which oversees ICE. He is sued in his official capacity.

19. Respondent Todd Blanche is the Attorney General of the United States and is sued in his official capacity.

20. To the extent the Court determines that any named Respondent is not a proper party, Petitioner respectfully requests dismissal of that Respondent without prejudice to proceeding against the proper custodial official or officials.

## **EXHAUSTION**

21. Petitioner requested custody redetermination before the New York–Varick Immigration Court. On July 28, 2026, Immigration Judge Dara Faith Reid denied the request solely on the ground of "No jurisdiction." The order reflects an appeal deadline of August 27, 2026. See Ex. A.

22. No statutory exhaustion requirement applies to this Petition. Section 1252(d)(1) conditions judicial review of a final order of removal on exhaustion of administrative remedies; Petitioner challenges neither a removal order nor any determination bearing on his removability, but only the lawfulness of his present physical confinement. The exhaustion requirement applicable here is therefore judicially created, and judicially created exhaustion requirements are discretionary rather than mandatory. *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003)("This Court has explained that the distinction between the two exhaustion

requirements can be pivotal," because statutory exhaustion requirements are mandatory, while the judicial (common-law) exhaustion doctrine is discretionary and includes a number of exceptions"); *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)("[w]here Congress specifically mandates, exhaustion is required . . . But where Congress has not clearly required exhaustion, sound judicial discretion governs").

23. That distinction was dispositive in *Beharry* itself: the court there treated former INA § 106(c) as a statutory exhaustion requirement and held that the petitioner's failure to exhaust deprived both the district court and the Court of Appeals of subject matter jurisdiction over his claim for discretionary relief from deportation. *Id*. at 53, 62. No comparable statutory bar reaches a challenge to detention.

24. Because the exhaustion requirement here is judicial, it may be excused. Exhaustion is not required where available remedies provide no genuine opportunity for adequate relief, where irreparable injury may occur without immediate judicial relief, where administrative appeal would be futile, or where the petitioner has raised a substantial constitutional question. *Id*. at 62.

25. Each of those conditions is satisfied here. The bar invoked against Petitioner is categorical and regulatory. The Department's position is that an Immigration Judge may not redetermine custody for "[a]rriving aliens in removal proceedings, including persons paroled after arrival pursuant to section 212(d)(5) of the Act." 8 C.F.R. § 1003.19(h)(2)(i)(B); *see also* 8 C.F.R. § 1001.1(q) (an arriving alien "remains such even if paroled . . . and even after any such parole is terminated or revoked"); *Matter of Oseiwusu*, 22 I. & N. Dec. 19, 20 (BIA 1998). The Board has separately and repeatedly held that Immigration Judges lack bond jurisdiction over applicants for admission. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 225 (BIA 2025); *Matter of N-A-G-C-*, 29 I. & N. Dec. 662 (BIA 2026). An appeal to the Board

would therefore ask the Board to disregard both its own controlling precedent and the regulation on which the Immigration Judge relied. That is futility, and it offers no prospect of prompt relief from ongoing physical confinement.

26. Petitioner's claims are also purely legal—which statute authorizes his detention, and what process the Fifth Amendment requires—and require no further factual development by the agency. Petitioner further raises substantial constitutional questions, which independently support excusing exhaustion.

## STATEMENT OF FACTS

### A. Entry, Parole, and Four and One-Half Years in the Interior

27. Petitioner is a native of Azerbaijan and a citizen of the Russian Federation. On or about December 10, 2021, he presented himself at the San Ysidro Port of Entry and was thereafter permitted to enter the United States on parole. DHS's Notice to Appear, dated December 12, 2021, designates Petitioner as an "arriving alien" and alleges that, at the time he applied for admission, he lacked the documents described in 8 U.S.C. § 1182(a)(7)(A)(i)(I). The accompanying CBP Form I-94 reflects a December 12, 2021 entry, Class of Admission "DT," and an admit-until date of December 10, 2022. See Ex. F.

28. Following his release into the United States, Petitioner resided here for approximately four and one-half years before his present immigration detention. His removal proceedings remain pending, and his Individual Hearing is scheduled for September 14, 2026. EOIR records reflect that payment was processed on October 1, 2025 for Petitioner's Form I-589, Application for Asylum, and USCIS issued Petitioner an Employment Authorization Document bearing category C08. See Exs. F, G. These records confirm that Petitioner has continued to pursue relief through the immigration process while remaining available to the Government.

29. Petitioner married Marina Stepashkin in Los Angeles, California, on January 17, 2026. See Ex. C. Ms. Stepashkin is a United States citizen and has filed a Form I-130, Petition for Alien Relative, on his behalf, which remains pending. See Ex. D, E. Because Petitioner is charged as an arriving alien, jurisdiction over any resulting application for adjustment of status lies with USCIS rather than the immigration court. See 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1)(ii). That family-based process gives Petitioner an additional and substantial reason to remain available to immigration authorities and to pursue his case through lawful channels.

**B. The Criminal Matters**

30. Petitioner was arrested in Kings County on February 24, 2026, in Kings Criminal Court Case No. CR-009859-26KN. The charges included vehicle and license-plate violations, criminal possession of a forged instrument in the third degree, and obstructing governmental administration in the second degree. On July 21, 2026, every charge in that case was dismissed. See Ex. B.

31. A separate case remains pending in Richmond Criminal Court, Case No. CR-001043-26RI. Public court records reflect charges including criminal possession of a forged instrument in the second degree, forgery in the second degree, grand larceny in the third and fourth degrees, unauthorized use of a vehicle, falsifying business records, offering a false instrument for filing, criminal possession of stolen property, and related misdemeanor charges. Petitioner was arraigned and pleaded not guilty. See Ex. H.

32. The Richmond County matter is a non-assaultive, property-related prosecution. Petitioner maintains that he did not know the property involved was stolen and that he lacked the criminal knowledge and intent alleged by the prosecution. Those allegations remain unproven, and no conviction has resulted from the Richmond County case.

33. The Richmond County District Attorney's Office has offered a non-criminal plea to a violation upon a successful payment of restitution of approximately $3,800, which would result in no criminal conviction and no criminal record. See Declaration of Counsel ¶ 4. The case is adjourned to September 17, 2026, when it is expected to be resolved. See Ex. H.

**C. Re-Detention and the Absence of Any Custody Determination**

34. ICE took Petitioner into immigration custody on or about June 23, 2026. He has remained detained since then and is presently confined at MDC Brooklyn.

35. Counsel has not been provided with, and is not aware of, any written notice terminating Petitioner's parole pursuant to 8 C.F.R. § 212.5(e); any Form I-286, Notice of Custody Determination; or any Form I-200 warrant identifying the statutory authority invoked for Petitioner's June 23, 2026 detention. To counsel's knowledge, Petitioner has never been told in writing what statute authorizes his present confinement.

36. Petitioner requested custody redetermination. On July 28, 2026, the Immigration Court denied his request solely on jurisdictional grounds. The Immigration Judge made no finding that Petitioner is dangerous, no finding that he presents a flight risk, and no individualized determination that detention is necessary. See Ex. A.

37. Continued detention materially interferes with Petitioner's ability to work with counsel to resolve the pending Richmond County prosecution, including preparation for taking an expected non-criminal plea at the September 17, 2026 court appearance. For example, ICE failed to produce the Petitioner for the August 17, 2026 Richmond County court appearance even though the District Attorney's office served a Judge-signed order to produce on ICE.

38. Petitioner's medical records document significant recent orthopedic treatment. He underwent right-shoulder arthroscopy on October 28, 2025 for impingement syndrome, bursitis, a labral tear, synovitis, and a partial rotator-cuff tear, and right-knee

arthroscopy on February 26, 2026 for medial and lateral meniscus tears, patellar chondral lesions, synovitis, and adhesions. The knee procedure included partial meniscectomies, synovectomy, lysis of adhesions, and arthroplasty, with postoperative range-of-motion and strengthening exercises and prescribed home equipment. See Ex. I. Petitioner relies on this recent surgical history only as an individualized circumstance relevant to custody and release planning, and not as a separate claim regarding medical care in detention.

## LEGAL FRAMEWORK AND ARGUMENT

### I. SECTION 1225(b)(2)(A) DOES NOT GOVERN PETITIONER'S INTERIOR RE-DETENTION; THE GOVERNING FRAMEWORK IS 8 U.S.C. § 1226

#### *A. Cunha v. Freden Establishes That § 1225(b)(2)(A) Reaches Only Those Presently Seeking Admission*

39. The INA establishes different detention regimes. Section 1225 principally addresses applicants seeking admission at the border or its functional equivalent, while § 1226 "applies to aliens already present in the United States" and "creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289, 303 (2018).

40. In *Barbosa da Cunha v. Freden*, the Second Circuit rejected the Government's contention that § 1225(b)(2)(A) mandates detention of every noncitizen who has never been admitted. 175 F.4th 61, 66–67 (2d Cir. 2026). The provision "applies only to a noncitizen who is both an 'applicant for admission' and who is 'seeking admission,'" and "seeking" is a present participle referring to "a noncitizen who is seeking admission right now, not one who sought admission in the past but no longer is." *Id.* at 74. To be "seeking admission" is to be presently "requesting . . . lawful entry into the United States after inspection and authorization." *Id.* at 77.

41. Under § 1226(a), by contrast, detention is discretionary, and a noncitizen so detained may seek redetermination of custody before an Immigration Judge and may appeal that redetermination to the Board. 8 C.F.R. § 1003.19(a), (f); *id.* § 1236.1(d)(1); see *Cunha*, 175 F.4th at 72–73.

42. The July 28 order did not identify any individualized statutory basis for detention. It denied custody redetermination for “No jurisdiction.” Under controlling Second Circuit law, that categorical denial cannot end the inquiry.

***B. Petitioner’s Prior Parole Does Not Make Him a Person Presently “Seeking Admission,” and 8 C.F.R. § 1003.19(h)(2)(i)(B) Cannot Withdraw Bond Eligibility That the Statute Confers***

43. Petitioner anticipates that Respondents will seek to distinguish *Cunha* on the ground that its petitioner entered without inspection, whereas Petitioner presented at a port of entry and was paroled. Respondents have advanced precisely that argument elsewhere in this Circuit. *See Fengqi Yan v. Almodovar*, 2026 U.S. Dist. LEXIS 151200, at 4-5 (S.D.N.Y. July 8, 2026)(arguing that "Da Cunha does not prohibit Petitioner['s] detention pursuant to 8 U.S.C. § 1225(b)(2)(A) because Petitioner was apprehended at or near the border"). The argument fails for five independent reasons.

44. First, *Cunha*’s reasoning is temporal, not modal. The Court’s holding turned on the present-participial form of “seeking,” not on the manner of a noncitizen’s arrival. 175 F.4th at 71–77. Whatever Petitioner sought in December 2021, that application was resolved: DHS inspected him, declined to admit him, paroled him, and referred him to proceedings under 8 U.S.C. § 1229a. He is not now requesting lawful entry. He seeks asylum, withholding of removal, and protection under the Convention Against Torture—forms of relief from removal that are not “admission.” The Board has drawn precisely this distinction, holding that a noncitizen who “does not contend that there is any basis for [his] admission to the United States”

and instead requests discretionary relief is not applying for admission. *Matter of Y-N-P-*, 26 I. & N. Dec. 10, 13 (BIA 2012). The *Cunha* Court expressly endorsed that reasoning.

45. Second, the entry fiction does not reach four and one-half years into the interior. *Cunha* held that the doctrine's reach is "sharply limited" and applies to those "detained shortly after unlawful entry." 175 F.4th at 86 (quoting *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 140 (2020)). *Leng May Ma v. Barber*, 357 U.S. 185 (1958), is a pre-IIRIRA decision addressing whether parole constitutes an "entry" for purposes of withholding eligibility; it is not a holding about detention authority, and it long predates the statutory scheme *Cunha* construes. The governing principle is that "once an alien enters the country, the legal circumstance changes . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

46. Third, a regulation cannot withdraw bond eligibility that the statute confers. If § 1226(a) supplies the authority for Petitioner's interior detention—as *Cunha* holds—then 8 C.F.R. § 1003.19(h)(2)(i)(B) cannot strip an Immigration Judge of the custody jurisdiction that 8 C.F.R. §§ 1003.19(a) and 1236.1(d)(1) otherwise confer. The *Cunha* panel expressly noted that "the parties quarrel over whether regulations issued in 1997 when IIRIRA was enacted support their respective interpretations," citing 8 C.F.R. §§ 1003.19(a) and (h)(2) and 1236.1(d), and resolved the appeal without deciding the question. 175 F.4th at 91. The question is therefore open in this Circuit, and it should be resolved in favor of the statute.

47. The 1997 rulemaking confirms that the agencies did not understand § 1225(b)(2)(A) to be a self-executing detention mandate reaching everyone deemed an applicant for admission. Explaining the regulations implementing IIRIRA, the Service and EOIR stated that, "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination." *Detention and*

*Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

48. Petitioner does not contend that this sentence describes his own circumstances; by its terms it addresses persons present without admission or parole. Its significance is structural. Had § 1225(b)(2)(A) commanded the detention of every person deemed an applicant for admission under § 1225(a)(1), the bond machinery the same rulemaking established in 8 C.F.R. §§ 1003.19(a) and 1236.1(d) would have had almost nothing to operate upon, and the agencies would have had no occasion to announce bond eligibility for any subset of that class.

49. The custody exclusions in § 1003.19(h)(2) are best understood as regulatory carve-outs from an otherwise available § 1226 bond scheme—not as an implementation of a statutory detention command in § 1225. A carve-out resting on the agencies' allocation of adjudicative authority must yield where, as here, the statute supplies bond eligibility. Respondents' reliance on the same passage as a concession that unadmitted noncitizens fall "literally within the scope of § 1225," cf. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), proves too much: the sentence announces bond eligibility, and a statute that mandated detention could not be satisfied by a regulation granting release.

50. Fourth, the Laken Riley Act presupposes that paroled entrants are detained under § 1226. *Cunha* reasoned that the Government's construction would render § 1226(c) largely superfluous, including as amended by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). 175 F.4th at 87-88. The Court observed that the offender whose crime prompted the Act "entered the country illegally before being paroled pending further proceedings." *Id.* at 87 n.8. Congress thus legislated § 1226(c)(1)(E) with paroled entrants squarely in view. If § 1225(b)(2)(A) already mandated the detention of every person paroled at a port of entry, the

2025 amendment would have had almost nothing to operate upon. *See Stone v. INS*, 514 U.S. 386, 397 (1995).

51. Fifth, Respondents' own position has not been consistent. *See, e.g., Oldacre v. Arteta*, No. 26-cv-2672, 2026 U.S. Dist. LEXIS 111247, at 8 (S.D.N.Y. May 19, 2026) (Government conceded that *Barbosa da Cunha* foreclosed reliance on § 1225(b)(2)(A) for a noncitizen encountered near the border and released).

52. Numerous decisions in this District have reached the same conclusion for noncitizens re-detained in the interior after an initial release at or near the border. *See, e.g*., *J.U. v. Maldonado*, 805 F. Supp. 3d 482 (E.D.N.Y. 2025); *R.P.L. v. Maldonado,* 814 F. Supp 3d 301 (E.D.N.Y. 2025); *Ndiaye v. Francis*, No. 26-CV-0069 (HG), 2026 U.S. Dist. LEXIS 9128 (E.D.N.Y. Jan. 14, 2026); *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 494 n.22 & App. A (S.D.N.Y. 2025) (collecting cases).

***C. The Notice to Appear Raises a Mandatory-Detention Question Under § 1226(c)(1)(E) That No Tribunal Has Adjudicated***

53. Section 1226(a) is the general custody provision, but it is subject to the mandatory-detention categories in § 1226(c). Section 1226(c)(1)(E), added by the Laken Riley Act, requires two distinct predicates: the noncitizen must be "inadmissible under" 8 U.S.C. § 1182(a)(6)(A), (a)(6)(C), or (a)(7), and must be "charged with, arrested for, convicted of, or admit[ ] having committed" acts constituting a listed offense, including theft or larceny. Because the Notice to Appear alleges inadmissibility under § 1182(a)(7)(A)(i)(I) and the Richmond County case includes larceny-related counts, Respondents may invoke that provision. Petitioner addresses it now and preserves all objections to it. The Court need not resolve that statutory question, however, because Petitioner is entitled to an individualized custody hearing even if § 1226(c)(1)(E) supplies detention authority. *See infra* Part II.B.

54. First, an unadjudicated charging allegation does not establish that a noncitizen "is inadmissible under" § 1182(a)(7). The statute is written in the present indicative and describes a status, not an accusation. Inadmissibility under § 1182(a)(7) is the very question the immigration court will decide at the September 14, 2026 Individual Hearing. Treating the allegation as self-proving would allow DHS to manufacture mandatory detention by the act of drafting a Notice to Appear, and would deprive the predicate of any independent work. Petitioner notes that another court in this District has applied § 1226(c)(1)(E) to a petitioner charged as inadmissible under § 1182(a)(7) who faced a New York larceny accusation. *See Ahmed v. Maldonado Jr*., No. 26-CV-3656, 2026 U.S. Dist. LEXIS 157224 (E.D.N.Y. July 15, 2026). The petitioner in that case conceded the provision's applicability, however, and the court therefore had no occasion to decide the statutory question Petitioner preserves here. Petitioner does not rest this Petition on that question.

55. Second, the Immigration Judge's July 28 order did not invoke § 1226(c)(1)(E), did not identify the § 1182(a)(7) charge as a basis for detention, and made no finding that either predicate was satisfied. The order stated only: "No jurisdiction." <u>See</u> Ex. A. A post hoc detention theory should not be treated as though it had been adjudicated when it was not. If Respondents rely on § 1226(c)(1)(E) in this action, they should be required to establish its predicates on the actual record, and to produce the Form I-200, Form I-286, and comparable custody records showing whether and when DHS invoked that authority.

56. Third, Petitioner preserves an as-applied Fifth Amendment challenge to any application of § 1226(c)(1)(E) here. *Demore v. Kim*, 538 U.S. 510 (2003), sustained § 1226(c) as to a class defined by *convictions* and on the assumption that detention would be brief. *Id.* at 517–23, 530. The *Cunha* Court emphasized both limitations. Detention mandated by an unproven *charge*—where a parallel prosecution was dismissed in its entirety, where the pending matter is

non-assaultive and property-related, and where Petitioner is presumed innocent—does not rest on the rationale *Demore* approved, and must be tested under *Mathews*. *See Black v. Decker*, 103 F.4th 133, 148–51 (2d Cir. 2024).

## II. THE COMPLETE DENIAL OF INDIVIDUALIZED CUSTODY REVIEW VIOLATES DUE PROCESS

### *A. The Categorical Refusal to Conduct Any Custody Hearing Denies Petitioner the Individualized Process the Fifth Amendment Requires*

57. The Fifth Amendment protects noncitizens from deprivation of liberty without due process of law, and "the Due Process Clause covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). Freedom from imprisonment lies at the heart of the liberty the Clause protects. *Zadvydas*, 533 U.S. at 690. The adequacy of procedures governing immigration detention is assessed under the private liberty interest, the risk of erroneous deprivation, and the Government's interests. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Black*, 103 F.4th at 148–51.

58. The risk of erroneous deprivation here is not merely elevated; it is total. The Immigration Judge did not weigh Petitioner's circumstances and deny bond on the merits. The court declined to exercise jurisdiction at all. No neutral decisionmaker has ever asked whether this Petitioner is dangerous or likely to abscond.

59. Decisions in this District have recognized the due-process defect created by detaining previously released noncitizens without meaningful individualized process, and have ordered release together with a requirement of notice and an opportunity to be heard before any re-detention. *See supra R.P.L. v. Maldonado, Ndiaye v. Francis*,

60. The Government's legitimate interests can be protected by less restrictive means. A neutral custody hearing can evaluate bond, reporting, supervision, electronic

monitoring, or other conditions based on Petitioner's actual circumstances rather than a categorical jurisdictional rule.

61. If a custody hearing is ordered, Petitioner respectfully requests that the Government bear the burden of demonstrating by clear and convincing evidence that continued detention is necessary because Petitioner presents a danger or a flight risk, and that the decisionmaker be required to consider Petitioner's ability to pay any bond set and the availability of alternatives to detention. That is the process the Second Circuit has required. *Black*, 103 F.4th at 138, 156–62; *Velasco Lopez*, 978 F.3d at 855–56.

62. Petitioner further presses affirmatively—not merely as a preserved claim—that the duration and circumstances of his detention have already rendered continued confinement without an individualized bond hearing constitutionally inadequate. Petitioner has been detained since on or about June 23, 2026, a period of approximately fifty-eight days as of the date of this Petition, without any custody determination whatsoever. His Individual Hearing is set for September 14, 2026; any adverse decision would be followed by appeal to the Board and potentially a petition for review; and his detention will therefore continue for a substantial and presently indeterminate additional period. Even where § 1226(c) supplies detention authority, the Second Circuit requires a flexible, fact-specific inquiry into whether continued detention without a hearing comports with due process, rather than a fixed durational threshold. *Black v. Decker*, 103 F.4th 133, 148–56 (2d Cir. 2024); *see also Velasco Lopez v. Decker*, 978 F.3d 842, 851–56 (2d Cir. 2020). Petitioner notes that the Supreme Court granted certiorari in *Genalo v. Black*, No. 25-886, 2026 U.S. LEXIS 2488 (June 15, 2026), to consider whether detention under § 1226(c) may become unreasonably prolonged, whether a bond hearing is constitutionally required, and whether the Government must bear the burden of justifying

continued detention by clear and convincing evidence. *Black* remains binding precedent in this Circuit pending decision.

***B. Even If § 1226(c)(1)(E) Applies, the Duration and Circumstances of Petitioner's Detention Require an Individualized Bond Hearing***

63. That question was recently addressed by a court of this District on facts closely parallel to Petitioner's. In *Ahmed v. Maldonado Jr.,* 2026 U.S. Dist. LEXIS 157224 (E.D.N.Y. July 15, 2026., the petitioner was confined at MDC Brooklyn following a period of release on humanitarian parole; his Notice to Appear charged inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I); he was subsequently arrested on a New York larceny charge; and the Government contended that § 1226(c)(1)(E), as added by the Laken Riley Act, mandated his detention without bond.

64. The court concluded that § 1226(c)(1)(E) supplied the statutory basis for that detention. It nonetheless held that continued confinement without an individualized custody determination—after a period of approximately two months—violated the Due Process Clause under the *Mathews* framework applied in *Black*. *Id.* at 10-11. The court accordingly ordered a bond hearing at which the Government bore the burden of establishing danger to the community or risk of flight by clear and convincing evidence, and at which the adjudicator was required to consider the detainee's ability to pay and the availability of alternatives to detention. *Id*. at *14.

65. *Ahmed* is materially indistinguishable from this case, and Petitioner's individual circumstances are in several respects more favorable. Like the *Ahmed* petitioner, Petitioner was released following inspection at the border, is charged as inadmissible under § 1182(a)(7)(A)(i)(I), faces a New York larceny-related accusation, and is confined at MDC Brooklyn. Unlike the *Ahmed* petitioner, Petitioner has lived in the interior for approximately four and one-half years; one of the two prosecutions against him was dismissed in its entirety; the sole remaining prosecution is non-assaultive and property-related, and the assigned prosecutor has

offered to resolve it without any criminal conviction; he is married to a United States citizen who has filed a pending Form I-130 on his behalf; he holds a USCIS-issued Employment Authorization Document; his asylum application is pending with an Individual Hearing already scheduled; and he has identified documented housing with his wife upon release. If approximately two months of detention without a hearing offended due process in *Ahmed*, it does so at least as forcefully here.

66. Petitioner anticipates that Respondents will respond that *Black* declined to recognize an automatic entitlement to a bond hearing at the outset of § 1226(c) detention and observed that detention exceeding six months raises particularly serious concerns. 103 F.4th at 150. That argument was presented and rejected in *Ahmed*, because *Black* prescribes an individualized and flexible inquiry rather than a six-month bright-line rule. *Id*. at 148–56. The considerations that matter here—the total absence of any custody determination; the unadjudicated and non-assaultive character of the accusation on which mandatory detention would rest; the dismissal of the parallel prosecution in its entirety; the prosecutor's stated willingness to resolve the remaining case without a criminal conviction; and the substantial further detention that the remaining immigration proceedings will entail—all weigh in favor of ordering a hearing now.

## III. PETITIONER'S INDIVIDUAL CIRCUMSTANCES REQUIRE GENUINE CUSTODY REVIEW

67. Nothing in the record before the Immigration Court constitutes an adjudicated finding that Petitioner is dangerous. The Kings County prosecution ended with dismissal of every count. <u>See</u> Ex. B.

68. The Richmond County prosecution is pending and Petitioner remains presumed innocent. He pleaded not guilty and maintains that he lacked knowledge that the

property was stolen and lacked the criminal intent alleged. The case concerns property-related allegations rather than assaultive conduct or physical injury.

69. Petitioner has retained undersigned counsel to litigate the Richmond County case. On August 14, 2026, undersigned counsel spoke with the assigned Assistant District Attorney, Anthony Accardo, who advised that the People's offer to resolve the case is payment of restitution of approximately $3,800 and a plea to a non-criminal violation, which would result in no criminal conviction and no criminal record. See Declaration of Counsel ¶ 4. His next court appearance is on September 17, 2026, which is when the case is expected to be resolved. Those ongoing proceedings give Petitioner a strong practical reason to remain in New York, comply with court obligations, and remain available to counsel.

70. That proposed disposition bears directly on the governmental-interest side of the *Mathews* inquiry. The office charged with prosecuting the sole remaining accusation against Petitioner—and the office best positioned to assess its gravity—is presently prepared to resolve it without any criminal conviction, upon payment of restitution. Petitioner does not suggest that the offer establishes his innocence; it does not. It is, however, highly probative of the practical seriousness of the pending prosecution, and it substantially undercuts any contention that continued civil detention is necessary to protect the community from danger. The accusation is non-assaultive; no person is alleged to have suffered violence or bodily injury; Petitioner denies the requisite knowledge and intent; the parallel Kings County prosecution was dismissed in its entirety; and the prosecutor responsible for the remaining matter is willing to terminate it without a criminal record.

71. Petitioner is married to a United States citizen, and a Form I-130 petition filed on his behalf remains pending. See Exs. C, D, E. His marriage and pending family-based immigration process are substantial community ties and provide an additional incentive to appear

rather than abscond. He has a pending asylum application and a USCIS-issued Employment Authorization Document, further demonstrating his ongoing participation in lawful immigration processes. See Exs. F, G.

72. Petitioner has resided in the United States since December 2021, has pursued asylum relief, has obtained employment authorization, and has a pending removal case with an Individual Hearing scheduled for September 14, 2026. His immigration case, family relationship, work authorization, and active criminal defense are all concrete matters that can be evaluated in an individualized custody hearing. A categorical refusal to conduct that hearing prevents any neutral decisionmaker from considering those facts.

73. If released, Petitioner would reside with his wife Marina Stepashkin at her Brooklyn, New York residence, and would appear at all scheduled criminal and immigration proceedings. His recent orthopedic surgeries are individualized circumstances relevant both to custody and to appropriate conditions of release. See Ex. I.

74. Petitioner also has substantial economic and community ties to New York through a business he founded. New York Department of State records show that on November 11, 2025, Petitioner formed Cleaning Services for PD Inc., a domestic business corporation in Kings County. The Certificate of Incorporation identifies Petitioner as the incorporator, and the Department of State filing receipt identifies him as the filer and the corporation's service-of-process addressee. See Ex. J. The Internal Revenue Service thereafter issued an Employer Identification Number to Cleaning Services for PD Inc. and addressed its notice in care of Petitioner at the corporation's Brooklyn address. See Ex. K. These documented business ties provide an additional concrete incentive for Petitioner to remain in New York, comply with all criminal and immigration proceedings, and continue attending to his lawful business affairs rather than abscond.

75. The Government remains free at a proper hearing to present any evidence it believes establishes danger or flight risk. What due process does not permit is continued detention based solely on a determination that no tribunal has authority to conduct the individualized inquiry at all.

## IV. IMMEDIATE RELEASE, OR ALTERNATIVELY A PROMPT INDIVIDUALIZED HEARING, IS THE APPROPRIATE REMEDY

76. A habeas court is directed to "dispose of the matter as law and justice require." 28 U.S.C. § 2243. "Habeas is at its core a remedy for unlawful executive detention," and "[t]he typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Section 2243 further directs the court to award the writ or issue an order to show cause "forthwith," returnable within three days unless good cause is shown for additional time.

77. Courts in this District have ordered immediate release where previously released noncitizens were later detained in the interior without the process required by law. See *R.P.L.*, *Ndiaye*. Immediate release is warranted here because the only custody ruling Petitioner has received was a categorical denial of jurisdiction that cannot be reconciled with *Cunha*.

78. At minimum, the Court should direct a prompt individualized custody hearing before a neutral decisionmaker, with constitutionally adequate procedural protections and consideration of reasonable alternatives to detention.

## CAUSE OF ACTION

79. Petitioner repeats and incorporates by reference the preceding allegations as though fully set forth herein.

80. Respondents' continued detention of Petitioner violates the Immigration and Nationality Act and the Fifth Amendment to the extent it rests on the premise that §

1225(b)(2)(A) governs his interior re-detention and forecloses individualized custody review, contrary to *Barbosa da Cunha v. Freden*.

81. Respondents' continued detention of Petitioner independently violates the Fifth Amendment because no neutral decisionmaker has made any individualized determination that detention is necessary to prevent danger to the community or risk of flight.

82. Respondents' continued detention of Petitioner further violates the Fifth Amendment because, even assuming that 8 U.S.C. § 1226(c)(1)(E) supplies statutory authority for that detention, its duration and circumstances have rendered continued confinement unreasonable absent an individualized bond hearing at which the Government bears the burden of proof by clear and convincing evidence. *Black v. Decker*, 103 F.4th 133, *Ahmed v. Maldonado,* 2026 U.S. Dist. LEXIS 157224.

83. To the extent Respondents invoke § 1226(c)(1)(E) or another mandatory-detention provision, they must establish its statutory predicates on the actual record. This Court retains habeas jurisdiction to determine whether Petitioner is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3).

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

(1) Assume jurisdiction over this matter;

(2) Issue an order to show cause pursuant to 28 U.S.C. § 2243 directing Respondents to show cause, within three days or such other short period as the Court may set, why the writ should not be granted;

(3) Issue a writ of habeas corpus ordering Petitioner's immediate release from immigration custody, on reasonable conditions of supervision if the Court deems conditions appropriate;

(4) In the alternative, order a prompt individualized custody hearing before a neutral decisionmaker, preferably within five days, at which Respondents bear the burden of proving by clear and convincing evidence that detention is necessary because Petitioner is a danger to the community or a flight risk, and at which the decisionmaker must consider

Petitioner's ability to pay any bond and the availability of alternatives to detention;

(5) Declare that 8 U.S.C. § 1225(b)(2)(A) does not authorize categorical mandatory detention of Petitioner on the circumstances alleged here, consistent with *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026);

(6) Order that Petitioner not be re-detained without prior written notice and an opportunity to be heard before a neutral decisionmaker, at which Respondents bear the burden of establishing the statutory authority for any such detention;

(7) If Respondents assert 8 U.S.C. § 1226(c)(1)(E) or another mandatory-detention provision, direct prompt production of the Form I-200, Form I-286, any notice of parole termination under 8 C.F.R. § 212.5(e), and other custody records identifying when and on what basis that authority was invoked, and provide expedited consideration of the asserted statutory basis and Petitioner's preserved objections before denying habeas relief; and

(8) Grant such other and further relief as the Court deems just and proper.

Dated: Brooklyn, New York
August 21, 2026

Respectfully submitted,

/s/ Igor Litvak

IGOR LITVAK, ESQ.
The Litvak Law Firm, PLLC
1733 Sheepshead Bay Road, Suite 22
Brooklyn, New York
Attorney for Petitioner Ilkin Sradzhly

**DECLARATION OF COUNSEL**

I, Igor Litvak, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am an attorney duly admitted to practice before this Court and represent Petitioner Ilkin Sradzhly in this matter and in the pending Richmond County criminal proceeding.

2. I have read the foregoing Petition for a Writ of Habeas Corpus. The factual allegations contained therein are true to the best of my knowledge, information, and belief, based on my review of the documents attached as Exhibits A through L, my communications with Petitioner, and my review of publicly available court and agency records.

3. Petitioner is presently confined at MDC Brooklyn and is unable to execute a verification without delay that would prejudice his rights. This declaration is submitted on his behalf pursuant to 28 U.S.C. § 2242.

4. On August 14, 2026, I spoke by telephone with Assistant District Attorney Anthony Accardo of the Richmond County District Attorney's Office, who is assigned to the prosecution captioned *People v. Sradzhly*, Case No. CR-001043-26RI. ADA Accardo advised me that the People's offer to resolve that case is payment of restitution of approximately $3,800 together with a plea to a non-criminal violation, which would result in no criminal conviction and no criminal record. The matter is adjourned to September 17, 2026.

Executed on August 21, 2026, at Brooklyn, New York.

/s/ Igor Litvak
IGOR LITVAK, ESQ.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2026, I caused a true and correct copy of the foregoing Petition for a Writ of Habeas Corpus, together with the exhibits thereto, to be served upon the following by depositing the same in the United States mail, via the United States Postal Service, in properly addressed envelopes with postage prepaid

- United States Attorney's Office, Eastern District of New York, 271-A Cadman Plaza East, Brooklyn, New York 11201
- Office of the Principal Legal Advisor, U.S. Immigration and Customs Enforcement, New York City Field Office, 26 Federal Plaza, Room 1130, New York, NY 10278
- Warden, Metropolitan Detention Center, 80 29th Street, Brooklyn, New York 11232
- Attorney General of the United States, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, D.C. 20530

/s/ Igor Litvak
IGOR LITVAK, ESQ.