UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x

ILKIN SRADZHLY,

Petitioner,

v.

RAUL MALDONADO, JR., *et al.*,

Respondents.

---------------------------------------------------x

**MEMORANDUM AND ORDER**
1:26-CV-5129 (RPK)

RACHEL P. KOVNER, United States District Judge:

Petitioner Ilkin Sradzhly brings this petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his detention by Immigration and Customs Enforcement ("ICE"). This Court has jurisdiction because petitioner was in this district when he filed this petition. *See Ozturk v. Hyde*, 136 F.4th 382, 390–91 (2d Cir. 2025). For the following reasons, the petition is denied.

## BACKGROUND

The following facts are drawn from the allegations in the petition and from a declaration prepared by an ICE officer who reviewed petitioner's immigration records.

Petitioner is a native of Azerbaijan and citizen of Russia. Ross Decl. ¶ 3 (Dkt. #9-1). He was paroled into the United States in December 2021. A Notice to Appear charging that he was removable was filed with the Executive Office of Immigration Review in early 2022. *Id.* ¶¶ 6–8. He previously conceded the allegations in the Notice to Appear, and an immigration judge found him removable as charged under 8 U.S.C. § 1182(a)(7)(A)(i)(I). Ross Decl. ¶¶ 16–17, 21–22.

Petitioner was arrested in New York five times between May 2025 and February 2026 for offenses ranging from vehicle theft and unauthorized use to forgery and possession of stolen property. *Id.* ¶¶ 23–32. On February 18, 2026, petitioner was arrested by the New York Police Department in Richmond County and charged with, among other offenses, grand larceny. *Id.* ¶ 31. ICE issued a Form I-200, Warrant for Arrest of Alien, and arrested him on June 23, 2026. *Id.* ¶ 30-33. During post-arrest processing, ICE conducted a custody determination and served petitioner with a Form I-286, Notice of Custody Determination, *id.* ¶¶ 34-35—procedures required for aliens detained under 8 U.S.C. § 1226(a). On July 21, 2026, petitioner requested a custody redetermination, but after he appeared for the hearing, an immigration judge denied him bond for lack of jurisdiction. Ross Decl. ¶¶ 43–44. He has been detained since June 23, 2026. *Id.* ¶ 39.

Petitioner's immigration case and his Richmond County criminal case are ongoing. Shortly after he was detained, petitioner's U.S.-citizen spouse filed a Form I-130, Petition for Alien Relative. Ross Decl. ¶ 38. A hearing in Immigration Court was scheduled for September 14, 2026, to address his application for relief from removal. *Id.* ¶ 42. In addition, petitioner represents that an Assistant District Attorney in Richmond County has offered to resolve petitioner's grand larceny charges by a plea to a non-criminal violation. Pet. ¶ 33 (Dkt. #1). The next appearance in that case is scheduled for September 17, 2026. *Ibid.*

## DISCUSSION

The petition is denied. Section 1226(c) of Title 8 requires that petitioner be detained during removal proceedings so long as a grand larceny charge remains pending against him. Petitioner has not established a constitutional defect in this detention given its limited duration.

## I. Petitioner is subject to mandatory detention under Section 1226(c)

By statute, petitioner is subject to mandatory detention during his removal proceedings as long as a state grand larceny charge is pending against him. "Section 1226 of title 8 authorizes the government to arrest and detain a noncitizen 'pending a decision on whether the alien is to be removed.'" *Black v. Decker*, 103 F.4th 133, 140 (2d Cir. 2024) (quoting 8 U.S.C. § 1226(a)), *cert. dismissed as moot sub nom. Genalo v. Black*, No. 25-886 (U.S. Sept. 11, 2026); *see Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) ("Section 1226 generally governs the process of arresting and detaining that group of aliens pending their removal."). "Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien" pending a removal decision, and "'may release' an alien detained under § 1226(a) 'on . . . bond' or 'or conditional parole.'" *Jennings*, 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

Section 1226(c), however, requires mandatory detention of certain classes of aliens, providing that the "Attorney General *shall* take into custody" such noncitizens. 8 U.S.C. § 1226(c)(1) (emphasis added); *Jennings*, 583 U.S. at 289. A 2025 amendment enacted as part of the Laken Riley Act extends this provision to any alien who (1) is inadmissible under Section 1182(a)(7), and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any . . . larceny . . . offense . . . ." 8 U.S.C. § 1226(c)(1)(E); *see* Pub. L. No. 119-1, 139 Stat. 3 (2025). An alien detained under this section is entitled to challenge whether he satisfies the statutory predicates in what is known as a "*Joseph* hearing." *Black*, 103 F.4th at 152 (citing *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999)); *Jennings*, 583 U.S. at 289 n.1; *see Demore v. Kim*, 538 U.S. 510, 514 n.3 (2003) (describing the *Joseph* hearing as an "individualized review" that is "immediately provided to a detainee" challenging applicability of Section 1226(c)). But if he satisfies the statutory predicates, he lacks any statutory entitlement to a bond hearing challenging

his detention based on his risk of flight or dangerousness. *Jennings*, 583 U.S. at 311–12. Instead, the Attorney General may release the alien "in extremely limited circumstances: only if the Attorney General decides . . . that release of the alien from custody is necessary for witness protection purposes," *Black*, 103 F.4th at 141 (internal brackets omitted), "*and* the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding," 8 U.S.C. § 1226(c)(4) (emphasis added).

Petitioner's mandatory detention is consistent with Section 1226(c)—the statutory provision under which he is currently detained. *See* Ross Decl. ¶ 39. Petitioner previously conceded his inadmissibility under 8 U.S.C. § 1182(a)(7). Ross Decl. ¶ 16; *see* 8 U.S.C. § 1229a(e)(2)(A). And there appears to be no dispute he satisfies the second statutory requirement: he "is charged with" a larceny offense. Ross Decl. ¶ 31. To the extent petitioner wishes to challenge whether he satisfies the statutory predicates, his recourse is a *Joseph* hearing. *See* 8 C.F.R. §1003.19(h)(2)(ii). While petitioner protests that he already sought one and was denied, petitioner appears to have simply "filed a custody redetermination request," which was denied for lack of jurisdiction. Pet'r's Reply 3 (citing Ross Decl. ¶ 43–44) (Dkt. #10). A "custody redetermination" hearing is not a *Joseph* hearing—it is the very "bond hearing" that *Jennings* determined is statutorily unavailable to those detained under Section 1226(c). *Onosamba-Ohindo v. Ball*, 184 F.4th 74, 79 (2d Cir. 2026); *Jennings*, 583 U.S. at 311–12; *see* 8 C.F.R. § 1003.19(h)(2)(i)(D) (providing that "an immigration judge *may not redetermine conditions of custody* . . . with respect to . . . [a]liens in removal proceedings subject to" 8 U.S.C. § 1226(c)(1) (emphasis added)).

Petitioner contends that the government may not detain him without an individualized bond hearing under Section 1226(c) absent evidence that the government "invoked" Section 1226(c)(1)(E) as a basis for detention. Pet. ¶ 55. He suggests the government may have actually invoked Section 1226(a) as the basis for his detention, because immigration officers made an initial custody determination after his arrest—employing a procedure used for aliens arrested under Section 1226(a), who might be entitled to release. Pet'r's Reply 4. But the Second Circuit has treated the question of which provision governs an alien's detention as a legal question turning on statutory interpretation. *See Barbosa da Cunha v. Freden*, 175 F.4th 61, 71 (2d Cir. 2026) (interpreting which statutory provision governed petitioner's detention without deference to the government's determination that Section 1225 applied). Moreover, the statute *requires* the Attorney General to detain aliens in removal proceedings who fall under the mandatory-detention provision, 8 U.S.C. § 1226(c)(1), so even if immigration officers initially incorrectly invoked a different statutory provision, Section 1226(c) requires petitioner's detention. *See Peralta-Malla v. Mullin*, No. 26-CV-2903 (AT), 2026 WL 1346325, at *3 (S.D.N.Y. May 14, 2026) (holding detention authority existed under Section 1226(c)(1)(E) when predicates apply regardless of government's initial justification); *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 486 (E.D.N.Y. 2025) (recognizing that ICE's initial statutory basis for detention is not controlling, though it may be relevant to the Court's assessment of the government's credibility).

## II. Petitioner's approximately three-month detention is not constitutionally defective

Petitioner's constitutional challenge to his detention pending removal proceedings fails in light of the brief duration of his detention. In this Circuit, under *Black v. Decker*, whether an alien subject to mandatory detention under Section 1226(c) has a constitutional entitlement to a bond hearing is assessed under the framework in *Mathews v. Eldridge*, 424 U.S. 319 (1976). 103 F.4th at 147–48. That framework calls for balancing (1) "the private interest that will be affected by the

official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Black*, 103 F.4th at 150–51 (citing *Mathews*, 424 U.S. at 335). District courts do not write on a blank slate in balancing these incommensurate interests. The Supreme Court has already addressed a due process challenge to Section 1226(c) detentions in *Demore*, 538 U.S. 510, and the Second Circuit decided several due process challenges to immigration detentions in *Demore*'s wake, *see Black*, 103 F.4th 133; *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020). As explained below, under these precedents, petitioner's relatively brief mandatory detention during removal proceedings thus far is consistent with due process.

Particularly illuminating—and all but fatal to petitioner's due process challenge—is the Supreme Court's decision in *Demore* rejecting the due process claim of a legal permanent resident who had been detained under Section 1226(c) for about six months before a district court granted habeas relief. 538 U.S. at 531. As a starting point, the Supreme Court reaffirmed that aliens are entitled to due process of law in deportation proceedings, but held that Congress could restrict the liberty interests of aliens in a manner that "would be unacceptable if applied to citizens." *Id.* at 522 (discussing cases). More specifically, the Court noted its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526. It further observed that it had long permitted Congress to rely on categorical rules rather than individualized determinations when determining when aliens should be held in custody during removal proceedings. *Id.* at 523–24, 526 (discussing *Carlson v. Landon*, 342 U.S. 524 (1952); *Reno v. Flores*, 507 U.S. 292 (1993)).

The Court then applied this jurisprudence to overrule the lower courts' holding that a legal permanent resident's roughly six-month detention without an individualized bond hearing denied him due process. *Demore*, 538 U.S. at 515, 526–30. The Court explained that Section 1226's requirement of detention during removal proceedings for those convicted of certain crimes, like the petitioner in that case, "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings," even if it was not the "least burdensome means" of doing so. *Id.* at 528. It did not find the alien petitioner had a liberty interest that weighed so heavily against the government's interest as to render the mandatory detention required by Section 1226(c) unconstitutional—a conclusion it suggested followed from the temporal limits on the mandatory detention. *Id.* at 528–29. Specifically, the Court explained that the detention of aliens under Section 1226 had "a definite termination point" when the removal proceeding concluded, and that detentions ranged from "less than the 90 days [the Court] considered presumptively valid in *Zadvydas* [*v. Davis*, 533 U.S. 678 (2001)]" "in the majority of cases" to "about five months in the minority of cases in which the alien chooses to appeal." *Demore*, 510 U.S. at 529–30. The petitioner in *Demore*, while detained for "somewhat longer than the average," would have similarly had his removal hearing within approximately five months if he had not sought a continuance in the immigration court. *Id.* at 531 & n.13. Taking this data on duration into account, the Court concluded that the petitioner's detention was "governed by" its prior cases treating "detention during removal proceedings [a]s a constitutionally permissible part of that process." *Id.* at 531.

Given *Demore*, the Second Circuit has found that detentions under Section 1226 amount to deprivations of due process only upon concluding that they were lengthier than those in *Demore* and thus implicated greater liberty interests. In *Velasco Lopez*, the Second Circuit concluded that

an alien detained under Section 1226(a) was entitled to a new bond hearing because, in contrast to the "relatively short duration of detention" that the "Supreme Court . . . upheld" in *Demore*, the petitioner in *Velasco Lopez* had been detained for fifteen months—several times longer than "in the vast majority of [Section 1226(c)] cases, according to statistics relied on by the *Demore* Court." 978 F.3d at 852, 855. Similarly, in *Black*, the Court of Appeals found that aliens detained for seven and twenty-one months, respectively, were entitled to individualized bond hearings after distinguishing *Demore* based on the duration of detention. 103 F.4th at 151 ("In approving detention for the pendency of removal proceedings, *Demore* was careful to emphasize the relatively short duration of section 1226(c) detention . . . . Both Petitioners here were detained for far longer, and their liberty interests more seriously infringed.").

Given *Demore*'s holding on the constitutionality of mandatory detentions for removal proceedings lasting as long as five months, petitioner has not established that his detention lasting fewer than three months is unconstitutional. The principal difference between petitioner's detention and the detentions addressed in *Demore* is that petitioner is detained under a subsection of Section 1226(c) that requires detention of aliens with certain types of *pending* criminal charges, whereas *Demore* involved detention of aliens convicted of certain crimes. But *Demore*'s reasoning remains applicable. As explained above, *Demore* rested on Congress's power to make categorical judgments about detention for aliens in removal proceedings—even when categorical rules were not the least restrictive means of addressing risk of flight or safety—as well as on the limited duration of the expected proceedings. *Demore*, 538 U.S. at 524. Given *Demore*'s emphasis on Congress's "broad power over naturalization and immigration," *id.* at 521–22, and Congress's power to make categorical rules, I cannot conclude that Congress exceeded its constitutional authority in making the categorical flight-risk determination embodied in Section 1226(c)

concerning aliens in removal proceedings with certain types of pending criminal charges. *See Oldacre v. Arteta*, No. 26-CV-2672 (JGK), 2026 WL 1398650, at *7 (S.D.N.Y. May 19, 2026), *amended in part and adhered to in part*, No. 26-CV-2672 (JGK), 2026 WL 1718184 (S.D.N.Y. June 12, 2026) ("The Laken Riley Act expresses Congress's concern that aliens unlawfully present in the United States who are arrested for theft-related offenses and other specific offenses may present a danger to the community or a risk of flight."). Applying *Demore* and its progeny, petitioner has not established a constitutional violation.

**CONCLUSION**

For the foregoing reasons, the petition is denied without prejudice.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: September 16, 2026
Brooklyn, New York